Jacob U. Ginsburg, Esq. (JG2442)
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, PA 19002
Telephone: (267) 468-5374
jginsburg@creditlaw.com
teamkimmel@creditlaw.com

Christopher E. Roberts, Esq. (PHV anticipated)
Butsch Roberts & Associates LLC
231 S. Bemiston Ave., Suite 260
Clayton, MO 63105
Tel: (314) 863-5700
Fax: (314) 863-5711
roberts@butschroberts.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES JUBB, VELMA JUANITA HOWELL, TADD SNOWBARGER, PAMELA ALLEN and JON HANSON, *on behalf of themselves and others similarly situated,* | Case No.: |
| *Plaintiffs,* | **CLASS-ACTION COMPLAINT** -and- **DEMAND FOR JURY TRIAL** |
| v. | |
| CHW GROUP, INC. d/b/a "Choice Home Warranty", | |
| *Defendant.* | |

## **COMPLAINT**

COME NOW Plaintiffs James Jubb ("Jubb"), Velma Juanita Howell ("Howell"), Tadd Snowbarger ("Snowbarger"), Pamela Allen ("Allen"), and Jon Hanson ("Hanson") (collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, by and

through their attorneys, alleges the following against CHW Group, Inc. d/b/a "Choice Home Warranty" (hereinafter "Defendant", "Choice Home Warranty" or "CHW"):

## INTRODUCTION

1.      Plaintiffs' Class-Action Complaint is filed under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

## BACKGROUND ON THE TCPA

2.      In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

3.      A leading sponsor of the TCPA described telemarketing "robocalls" as the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4.      The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq.*, affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

5.      Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

6.      47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period o, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the

phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

7.     Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

8.      In fact, in 2021 alone, there were over *five million complaints* from Americans to the FTC about unwanted telemarketing calls.  Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

9.     The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## PARTIES, JURISDICTION AND VENUE

10.     Plaintiff Jubb is a natural person, who resides in Millis, Massachusetts.

11.     Plaintiff Allen is a natural person, who resides in Colbert, Washington.

12.     Plaintiff Snowbarger is a natural person, who resides in Jenks Oklahoma.

13.     Plaintiff Howell is a natural person, who resides in Frostproof, Florida.

14.     Plaintiff Hanson is a natural person, who resides in Shawnee, Kansas.

15.     Each Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

16.     CHW is a corporation that has its principal place of business, head office, or otherwise valid mailing address at 1090 King Georges Post Road, Edison, NJ 08837.

17.     Defendant is a "person" as that term is defined by 47 U.S.C. §153(39).

18.     Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

19.     Each Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

20.     This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

21.     Defendant systematically conducts business in the State of New Jersey and is headquartered in the State of New Jersey.

22.     This Court has personal jurisdiction over all parties in this matter.

23.     Defendant is headquartered within this District. Therefore, venue is proper under 28 U.S.C. § 1391(b)(1).

## FACTUAL ALLEGATIONS

**Facts as to Jubb:**

24.     At all times relevant to this action, Jubb owned a cell phone, the number for which is 508-XXX-7833

4

25.     Jubb used his cell phone for primarily residential purposes, such as speaking with friends and family.

26.     Jubb registered his cell phone number on the federal Do-Not-Call registry on May 19, 2007.

27.     On various instances beginning on December 30, 2019, CHW placed unconsented voice calls, pre-recorded messages and text messages to Jubb's cell phone.

28.     Before that campaign, Jubb had no business relationship with CHW, and never consented to receive marketing messages from CHW.

29.     On January 7, 2020, CHW called Jubb and left the following prerecorded voice message:

> "Press one if you can chat now. Press two if this isn't a good time and I can call back when it better fits your schedule press nine if you got this call by mistake or do not want home warranty and I won't call."

30.     Jubb understands the message was pre-recorded because the voice was robotic and computerized and instructed Jubb to press digits, to indicate preference, rather than simply asking the question as a live person would.

31.     CHW also sent Jubb a text message on January 7, 2020. Jubb responded "STOP" via text to CHW that same day.

32.     On January 14, 2020 Defendant sent Jubb another voice message purporting to offer a $50 discount on a home warranty from CHW.

33.     An inexhaustive list of those calls to Jubb's cell phone is below:

//

| Date/time | Caller ID | Type of Communication |
|---|---|---|
| December 30, 2019, at 4:37 pm | 508-598-0350 | Voice Call |
| December 31, 2019, at 9:13 am | 732-379-5309 | Voice Call |
| December 31, 2019, at 5:59 pm | 732-379-5309 | Voice Call |
| January 2, 2020, at 9:30 am | 732-379-5309 | Voice Call |
| January 7, 2020 at 10:57 am | | Text message (Jubb responded "STOP") |
| January 7, 2020 at 9:53 am | 508-571-1570 | Prerecorded message |
| January 15, 2020 at 1:15 pm | 508-571-1570 | Prerecorded message |
| March 11, 2020 at 10:13 am | 800-816-1266 | Voice message |

34.     Upon information and belief, Jubb received additional calls from CHW not included in the above.

35.     The prerecorded calls and voice messages Jubb received identified "Choice Home Warranty" as the caller. Furthermore, the phone numbers 732-379-5309 and 800-816-1266 have been confirmed to be associated with CHW.

36.     Accordingly, Jubb knows the calls were by or on behalf of CHW.

37.     At no point did Jubb provide express written consent for CHW to place telemarketing calls to his cell phone.

38.     As a result of the foregoing, Jubb experienced frustration, annoyance, irritation and a sense that his privacy had been invaded by Defendant.

**Facts as to Howell:**

39.     At all times relevant hereto, Ms. Howell owned a cell phone, the number for which was (863) XXX-0925.

40.     At all times relevant hereto, Ms. Howell primarily used that cell phone for residential purposes, such as speaking with friends and family.

41.    Ms. Howell registered that cell phone number on the Do Not Call Registry on or around May 21, 2009.

42.    Plaintiff registered that cell phone number on the Do Not Call list in order to obtain solitude from unwanted telemarketing and solicitation calls.

43.    Beginning on or around October 1, 2021, Defendant began calling Ms. Howell on her cellular telephone to sell Plaintiff a home warranty plan.

44.    Prior to receiving the calls from Defendant, Ms. Howell never sought CHW's "home warranty" services.

45.    Ms. Howell did not consent to being contacted by CHW.

46.    Despite registration of her number on the Do Not Call Registry, CHW placed calls to Ms. Howell on numerous occasions attempting to solicit Plaintiff a home warranty plan that Plaintiff had no interest in.

47.    An inexhaustive list of those calls to Howell is below:

| Date/time | Caller ID | Type of Communication |
|---|---|---|
| October 1, 2021 at 9:45 am | 302-703-5619 | Voice Call |
| October 4, 2021 at Unknown | 863-213-3274 | Voice Call |
| October 5, 2021 at 3:30 pm | 863-213-3274 | Voice Call |
| October 5, 2021 at 6:32 pm | 810-209-6951 | Voice Call |
| October 8, 2021 at 2:26 pm | 888-468-0736 | Voice Call |
| October 11, 2021 at 2:58 pm | Number unknown | Voice Call |

48.    Upon information and belief, Ms. Howell received additional calls from Defendant not included in the above.

49.    Ms. Howell was able to determine Defendant's identity as the calling parties repeatedly confirmed they were calling from "Choice Home Warranty".

50.    During the call on October 5, 2021 at 3:30 pm EST, Ms. Howell explicitly advised CHW that she was on the Do Not Call Registry and she did not want to be contacted for solicitation purposes. Nonetheless, CHW called her again few hours later same day.

51.    Ms. Howell found the unconsented telephone calls to be irritating, annoying, disruptive and to be an invasion of her privacy.

**Facts as to Snowbarger:**

52.    At all times relevant hereto, Snowbarger owned a cell phone, the number for which was (918) XXX-9833.

53.    At all times relevant hereto, Snowbarger primarily used that cell phone for residential purposes, such as speaking with friends and family.

54.    Snowbarger registered that cell phone number on the Do Not Call Registry on June, 2007.

55.    Snowbarger registered that cell phone number on the Do Not Call list in order to obtain solitude from unwanted telemarketing and solicitation calls.

56.    In January 2021, CHW placed solicitation calls and texts to Snowbarger's cell phone soliciting home warranty plans in which he had no interest.

57.    Snowbarger did not consent to being contacted by CHW, let alone provide the express written consent required by the TCPA.

58.    Snowbarger also did not have any established business relationship with CHW before the campaign at issue.

59.    Snowbarger never sought CHW's services or any home warranty. A home warranty would be unnecessary to him as he resided in a new home covered by the builder's warranty.

60.    An inexhaustive list of those calls to Snowbarger's cell phone is below:

| Date/time | Caller ID | Type of Communication |
|---|---|---|
| January 5, 2021 at | 918-977-3157 | Voice Call |
| January 6, 2021 at 9:25 am | 918-977-3157 | Text message |

61.     In the call dated January 5, 2021, the calling party confirmed he was calling from "Choice Home Warranty" and stated the callback number was 800-816-2688, which is associated with CHW.

62.     After confirming the identity of the calling party, Snowbarger told CHW he was disinterested in CHW's services and instructed CHW to stop calling.

63.     Yet, the next day, on January 6, 2021 at 9:25 am CST, CHW texted Snowbarger's cell phone soliciting home warranty about which he just articulated he had no interest.

64.     As a result of the foregoing, Snowbarger experienced frustration, annoyance, irritation and a sense that his privacy had been invaded by Defendant.

**Facts as to Allen:**

65.     At all times relevant hereto, Ms. Allen owned a cell phone, the number for which was (509) XXX-0671.

66.     At all times relevant hereto, Ms. Allen primarily used that cell phone for residential purposes, such as speaking with friends and family.

67.     Ms. Allen registered that cell phone number on the Do Not Call Registry on 2006.

68.     Allen registered that cell phone number on the Do Not Call list in order to obtain solitude from unwanted telemarketing and solicitation calls.

69.     Beginning in February 2020, Defendant began calling Allen on her cellular telephone soliciting home warranty plans Allen did not want or need.

70.     At no point did Allen ever seek CHW's services, nor did she ever consent to being contacted by CHW.

71.     Allen had no established business relationship with CHW.

72.     Furthermore, Allen did not express interest in home warranty services before Choice Home's telemarketing campaign.

73.     Allen resided at all times in Washington State, which operates on Pacific Standard Time. Further, Allen has a 509 phone number, associated with Washington State.

74.     Despite that, CHW called her at least two times before 8:00 am PST.

75.     An inexhaustive list of CHW's telemarketing calls to Allen's cell phone is below:

| Date/time | Caller ID | Type of Communication |
|---|---|---|
| 02/24/2020 at 7:52 am PST | 848-256-4687 | Voice call |
| 03/02/2020 at 8:34 am PST | 848-256-4687 | Voice call |
| 03/02/2020 at 9:05 am PST | 848-256-4687 | Voice call |
| 03/02/2020 (time uncertain) | 848-256-4687 | Voice call |
| 03/04/2020 at 9:05 am PST | 848-256-4687 | Voice call |
| 03/04/2020 at 10:04 am PST | 848-256-4687 | Voice call |
| 03/23/2020 at 7:49 am PST | 848-256-4687 | Voice call |

76.     Upon information and belief, Allen received additional calls to those identified in the above list.

77.     During the call on March 23, 2020, the agent on the line disclosed his name was "Jordan" and he was calling from "Choice Home Warranty."

78.     The remainder of the calls in the chart above, came from the same phone number as the call from "Jordan" of CHW.

79.     The undersigned counsel has investigated and the phone number 848-256-4687 is in fact, associated with CHW.

80.     At no point did Allen provide express written consent for CHW to place telemarketing calls to her cell phone.

81.     As a result of the foregoing, Allen experienced frustration, annoyance, irritation and a sense that her privacy had been invaded by Defendant.

**Facts as to Hanson:**

82.     At all times relevant to this action, Hanson owned a cell phone, the number for which is 580-XXX-5594.

83.     Hanson used his cell phone for primarily residential purposes, such as speaking with friends and family.

84.     Hanson registered his cell phone number on the federal Do-Not-Call registry on February 28, 2010.

85.     At all times relevant to this action, Hanson also owned a cell phone, the number for which was 913-XXX-2782.

86.     Hanson also used that cell phone for primarily residential purposes, such as speaking with friends and family.

87.     Hanson registered his "913" area code phone number on the federal Do-Not-Call registry on July 2, 2005.

88.     On various instances between July 2021 and December 2023, CHW, or agents acting on its behalf, called Hanson's phone numbers soliciting home warranties.

89.     On July 15, 2021, Hanson received a call from a party who identified themselves as "Home Warranty Services." Hanson stayed on the line to identify the proper corporate name of the calling party, and eventually an agent disclosed he was calling from Choice Home Warranty.

90.     On August 25, 2021, Hanson received and missed two calls originating from 580-480-5594. Hanson elected to return the call in order to ascertain the identity of the calling party. After calling back that number, the answering party immediately identified herself as "Stacy" from "Choice Home Warranty."

91.     On September 16, 2021, CHW called Hanson no fewer than four (4) times within a five-minute timespan.

92.     On June 28, 2023, Hanson received a call from 580-360-6759. The caller purported to identify herself as "Miranda." The caller asked Hanson various questions regarding his home before transferring him to a "warranty specialist", who identified themselves as "Mark" from Choice Home Warranty.

93.     Hanson also received calls from "Miranda" calling from CHW - or on its behalf - on June 27, 2023, September 26, 2023, October 4, 2023 and numerous instances throughout the month of December 2023.[1]

94.     It was evident to Hanson that "Miranda" was not a live agent, but rather an avatar/soundboard technology which uses computerized or pre-recorded clips programmed to respond to human prompts.  Plaintiff could ascertain this because, *inter alia,* (a) the content of the message was generic, (b) the tone, cadence, and inflection of the voice was artificial and computerized, and (c) the voice was non-interactive with Hanson.

95.     Specifically, at several points in rapid succession, the voice ignored Hanson's questions, interrupted and spoke over him as if it did not recognize he was speaking, and changed its topic of questioning frequently in a jarring and unnatural manner.

96.     An inexhaustive list of those calls to Hanson's "580" cell phone follows below:

---

[1] As set forth in the charts below, "Miranda" called Hanson on his "580" cell phone and his "913" cell phone.

| Date/Time | Caller ID | Hanson's phone number called | Type of Communication |
|---|---|---|---|
| 7/15/2021 at 1:04 pm | 502-289-4840 | 580-XXX-5594 | Voice call |
| 7/15/2021 at 3:44 PM | 860-207-8194 | 580-XXX-5594 | Voice call |
| 7/21/2021 at 12:08 PM | 580-559-2406 | 580-XXX-5594 | Voice call |
| 8/16/2021 at 9:20 AM | 800-814-4346 | 580-XXX-5594 | Voice call |
| 8/25/2021 at 2:23 PM | 800-814-4345 | 580-XXX-5594 | Voice call |
| 8/25/2021 at 2:22 PM | 800-814-4346 | 580-XXX-5594 | Voice call |
| 8/27/2021 at 2:32 PM | 732-931-6911 | 580-XXX-5594 | Voice call |
| 9/16/2021 at 4:10 PM | 800-814-4206 | 580-XXX-5594 | Voice call |
| 9/16/2021 at 4:11 PM | 800-814-4206 | 580-XXX-5594 | Voice call |
| 9/16/2021 at 4:13 PM | 800-814-4206 | 580-XXX-5594 | Voice call |
| 9/16/2021 at 4:15 PM | 800-814-4206 | 580-XXX-5594 | Voice call |
| 6/27/2023 at 9:42 AM | 580-375-5020 | 580-XXX-5594 | pre-recorded/soundboard call |
| 6/28/2023 at 1:48 PM | 580-360-6759 | 580-XXX-5594 | pre-recorded/soundboard call |
| 9/11/2023 at 2:30 PM | 580-738-6894 | 580-XXX-5594 | Voice call |
| 9/12/2023 at 10:28 AM | 580-725-2604 | 580-XXX-5594 | Voice call |
| 9/26/2023 at 3:04 PM | 580-313-5028 | 580-XXX-5594 | pre-recorded/soundboard call |
| 10/4/2023 at 1:49 PM | 580-313-5028 | 580-XXX-5594 | pre-recorded/soundboard call |
| 12/1/2023 at 4:40 PM | 580-540-7925 | 580-XXX-5594 | Voice call |

97.    The calls also include the following calls to Hanson's "913" area code phone.

| Date and Time | Caller ID | Hanson's phone number called | Type of Communication |
|---|---|---|---|
| 12/4/2023 at 12:34 pm | 913-252-1420 | 913-XXX-2782 | Pre-recorded/ soundboard call |
| 12/5/2023 at 12:19 am | 913-229-9938 | 913-XXX-2782 | Voice call |
| 12/5/2023 at 9:18 am | 913-229-9938 | 913-XXX-2782 | Voice call |
| 12/11/2023 at 9:09 am | 913-252-1420 | 913-XXX-2782 | Pre-recorded/ soundboard call |
| 12/12/2023 at 2:42 pm | 913-252-1421 | 913-XXX-2782 | Pre-recorded/ soundboard call |
| 12/12/2023 at 12:31 pm | 913-252-1421 | 913-XXX-2782 | Pre-recorded/ soundboard call |
| 12/12/2023 at 3:34 pm | 913-252-1417 | 913-XXX-2782 | Pre-recorded/ soundboard call |
| 12/13/2023 at 9:02 am | 913-252-1421 | 913-XXX-2782 | Pre-recorded/ soundboard call |
| 12/13/2023 at12:28 pm | 913-252-1421 | 913-XXX-2782 | Pre-recorded/ soundboard call |
| 12/20/2023 at 9:08 am | 913-252-1420 | 913-XXX-2782 | Pre-recorded/ soundboard call |

98.     Most of the December 2023 calls listed above to Hanson's "913" cell phone, featured the pre-recorded or artificial voice of "Miranda" described above.

99.     As of the date of this filing, Hanson continues to receive pre-recorded calls from or on behalf of CHW.

100.     Each of the calls listed above either mentioned Choice Home Warranty explicitly, or sought to sell home warranty products, generally.

101.     Further, the December 2023 calls that did not specifically identity Choice Home Warranty nonetheless featured "Miranda", who had previously transferred Hanson to live CHW agents.

102.    Accordingly, Hanson understands CHW to be responsible, directly or vicariously,[2] for each of the calls identified above.

103.    At no point did Hanson provide express written consent for CHW to place telemarketing calls to his cell phones.

104.    As a result of the foregoing, Hanson experienced frustration, annoyance, irritation and a sense that his privacy had been invaded by CHW.

//

## Direct and Vicarious Liability

105.    Without having had the benefit of discovery to show otherwise, Plaintiffs understand and therefore that CHW is directly liable for the unsolicited calls because they were made directly by CHW.

106.    Alternatively, if some or all of the calls were made by third-party/parties on behalf of CHW, then CHW is vicariously liable for those calls.

107.    On May 9, 2013, the FCC articulated that the doctrine of vicarious liability applies in the context of the TCPA. A seller may not avoid liability by outsourcing telemarketing to third-party agents or vendors:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the

---

[2] Discovery will clarify whether CHW directly placed the calls or agent(s) did so on its behalf.

FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 FCC Rcd 6574 at 6588 (F.C.C. May 9, 2013) (internal citations omitted).

108.    Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

109.    The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

110.    Defendant CHW may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Plaintiffs and only known to CHW.

111.    While Plaintiffs allege CHW is directly liable based on what they know and understand at this time, if they learn the calls were made by agent(s) acting on CHW behalf, Plaintiffs will seek to hold CHW vicariously liable for those calls.

## CLASS ACTION ALLEGATIONS

112.    Pursuant to Federal Rules of Civil Procedure Rule 23(a), 23(b)(2) and 23(b)(3), Plaintiffs brings this lawsuit as a class action on behalf of themselves and on behalf of others similarly situated. This action satisfies the requirements of numerosity, commonality, adequacy of

representation and predominance. Only to the extent it is a requirement under applicable law, the proposed class satisfies the elements of ascertainability and typicality.

113.    The proposed class that Plaintiffs Jubb and Hanson seek to represent is tentatively defined as follows:

> **Pre-recorded Voice Call Class:** Every person in the United States who (1) are the subscriber or customary user of a cellular telephone or wireline residential phone; (2) who received one or more call from CHW (or on its behalf), where (3) voice messages using prerecorded or artificial voice technology played in said call(s), from four years prior to the filing of this complaint until the date a class is certified.

114.    The proposed class that Plaintiffs Howell, Snowbarger, Jubb, Allen, and Hanson seek to represent is tentatively defined as follows:

> **Do-Not-Call Registry Class:** Every person in the United States where: (1) the person 's registered his or her number on the National Do-Not-Call Registry;  (2) the person's telephone number was registered by the person on the National Do-Not-Call Registry 30 or more days.; (3) the person's number was registered to an individual rather than a business; (4) the person received two or more calls by or on behalf of CHW; (5)  within twelve months; and (6) those calls were for the purpose of soliciting CHW's products and/or services, from four years prior to the filing of the original Complaint through the date a class is certified.

115.    The proposed class that Plaintiff Allen seeks to represent is tentatively defined as follows:

> **Impermissible Time of Day Class**: Every person within the United States where (1) the person's number was registered to an individual rather than a business; (2) the person received two or more calls by or on behalf of CHW; (3)  within twelve months; (4) that were either before 8:00 am or after 9:00 pm, at the time of the person's location, from four years prior to the filing of the original Complaint through the date a class is certified.

116.    Plaintiffs reserve the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

117.    The members of the proposed classes are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believes that hundreds or thousands of people have been harmed by CHW's actions. The names and phone numbers of the members of the proposed class are readily identifiable through records available to CHW.

118.    Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

119.    On information and belief, Choice Home Warranty has called and continues to call people who are registered on the Do Not Call Registry. It is reasonable to expect that Choice Home Warranty will continue to make such calls absent this lawsuit.

120.    On information and belief, Choice Home Warranty has called and continues to place telemarketing calls without first obtaining a registration certificate from the Office of the Secretary of State. It is reasonable to expect that Choice Home Warranty will continue to make such calls absent this lawsuit.

121.    Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to, whether Choice Home Warranty called cell phone numbers that were registered on the Do Not Call Registry, whether such calls violate the TCPA, whether Choice Home Warranty obtained a registration certificate from the Office of the Secretary of State before placing telemarketing calls.

122.    Only to the extent required by law, Plaintiffs' claims are typical of the claims of the proposed class members because Plaintiffs' claim arose from the same practice that give rise to the claims of the members of the proposed class and is based on the same legal theories. Plaintiffs is not different in any relevant matter from members of the proposed class.

123.    Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in class action, TCPA litigation and consumer law. Plaintiffs' counsel has the resources to litigate this class action, and Plaintiffs and counsel are aware of their responsibilities to the putative members of the class and will discharge those duties. Plaintiffs reserve the right to join other unnamed class members into this lawsuit.

124.    A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

125.    In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

126.    Questions of law and fact, particularly the propriety of calling cell phone numbers registered on the National Do Not Call Registry, and placing calls to people without first obtaining a registration certificate from the Office of the Secretary of State, predominate over questions affecting only individual members.

127.    CHW has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

## COUNT I
### Violation of 47 U.S.C. § 227(b)(1) of the TCPA
### (*Jubb, Hanson and the Pre-Recorded Voice Call Class v. CHW*)

128.    Jubb, and Hanson bring this Count individually and on behalf of all others similarly situated.

129.    The TCPA prohibits placing calls using an artificial or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

130.    By calling Jubb, Hanson and the putative class members with a prerecorded voice, and without prior express consent of the called party to make such calls, CHW violated the TCPA including but not limited to 47 U.S.C. § 227(b)(1) and the TCPA's corresponding regulations.

131.    The TCPA provides a private right of action and statutory damages of $500 per violation, and up to $1,500 if the violated is determined to be willful. 47 U.S.C. § 227(b)(3).

132.    CHW initiated numerous calls to Jubb, Hanson and the putative class members using an automatically generated or pre-recorded voice.

133.    CHW's calls were not made for "emergency purposes."

32.    CHW's calls to Jubb, Hanson and the putative class members were made without first obtaining prior express written consent.

134.    CHW's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for the putative class members' rights under the law.

135.    Plaintiffs Jubb, Hanson and the putative class members are entitled to damages of $500.00 per violation for each call/voice message placed by CHW and up to $1,500.00 per violation if the Court finds that CHW willfully violated the TCPA.

WHEREFORE, Plaintiffs, James Jubb and Jon Hanson, and on behalf of all others similarly situated, requests the Court enter judgment against Defendant Choice Home Warranty and grant the following relief.

a. Enter an order against CHW pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Jubb and Hanson as the class representatives;

b. Enter an order appointing Kimmel & Silverman, P.C. and Butsch & Roberts LLC as class counsel;

c. Enter judgment in favor of Jubb, Hanson and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(b) (and its corresponding regulations) and up to $1,500 per violation of each subsection if CHW willfully violated the TCPA;

d. Award Jubb, Hanson, and the class all expenses of this action, and requiring CHW to pay the costs and expenses of class notice and administration; and,

e. Award Jubb, Hanson and the class such further and other relief the Court deems just and appropriate.

## COUNT II
### Violations 47 U.S.C. § 227(c)(5) of the TCPA
#### (*All Plaintiffs and Do-Not-Call Registry Class v. CHW*)

136.    The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receives more than one call on their cell phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

137.    Each Plaintiff registered his or her number on the National Do-Not-Call Registry.

138.    Each Plaintiff used his or her phone as a residential line.

139.    Each Plaintiff was a residential subscriber.

140.    The calls placed to each Plaintiff was a solicitation.

141.    The Plaintiffs all seek to represent the Do-Not-Call Registry Class.

142.    The penalty for each call placed in violation of the TCPA's restrictions on calling cell phone numbers registered on the National Do Not Call Registry is $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

143.    In addition, the TCPA allows the Court to enjoin Choice Home Warranty's violations of the TCPA's regulations prohibiting calls to cell phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

144.    By making calls to the cell phones of Plaintiffs and the putative class members after the numbers were registered on the National Do Not Call Registry, Choice Home Warranty violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

145.    Choice Home Warranty knew or should have known that the putative class members had their numbers registered on the Do Not Call Registry.

146.    Plaintiffs and the putative class members are entitled to damages of $500.00 per call made by or on behalf of Choice Home Warranty and up to $1,500.00 per call if the Court finds that Choice Home Warranty willfully violated the TCPA.

147.    Plaintiffs and the putative class members are entitled to an order from the Court enjoining Choice Home Warranty from violating the TCPA's regulations that prohibit calls to cell phone numbers registered on the Do Not Call Registry.

**Demand for Judgment**

WHEREFORE Plaintiffs James Jubb, Velma J. Howell, Tadd Snowbarger, Pamela Allen,

and Jon Hanson, individually, and on behalf of all others similarly situated, request the Court grant

the following relief:

    a.   Enter an order against CHW Group, Inc., pursuant to Federal Rule of Civil Procedure Rule 23, certifying this action as a class action and appointing Plaintiffs James Jubb, Velma J. Howell, Tadd Snowbarger, Pamela Allen and Jon Hanson as representatives of the class;

    b.   Enter an order appointing Kimmel & Silverman, P.C. and Butsch Roberts & Associates LLC and as counsel for the class;

    c.   Enter judgment in favor of Plaintiffs and the putative class members for all damages available under the TCPA, including statutory damages of $500 per violation, or up to $1,500 per violation if Choice Home Warranty willfully violated the TCPA;

    d.   Enter judgment in favor of Plaintiffs and the putative class members that enjoins Choice Home Warranty from violating the TCPA's regulations by calling cell phone numbers registered on the Do Not Call Registry;

    e.   Award Plaintiffs and the class all expenses of this action, and requiring defendant to pay the costs and expenses of class notice and claims administration; and,

    f.   Award Plaintiffs and the class such further and other relief the Court deems just and appropriate.

### COUNT III
### Violation of 47 U.S.C. § 227(c)(2) and 47 C.F.R. § 64.1200(c)(1) of the TCPA
### *(Allen and Impermissible Time of Day Class v. Choice Home Warranty)*

148.    The TCPA delegates rulemaking to the FCC.

149.    The FCC's regulations provide in relevant part that "no person or entity shall initiate any telephone solicitation to: Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location). 47 C.F.R. § 64.1200(c)(1).

150.    Defendant sent text messages and placed calls to Allen that were received before 8:00 am, PST, despite Allen having a Washington State area code and residing in Washington State.

151.    The calls before 8:00 am or after 9:00 pm made to Allen and the putative class, were in violation were in violation of 47 C.F.R. § 64.1200(c)(1).

152.    As a result of the above violations of the TCPA, Allen has suffered the losses and damages as set forth above entitling Allen to an award of statutory, actual and trebled damages.

WHEREFORE, Plaintiff, PAMELA ALLEN, individually, and on behalf of all others similarly situated, requests the Court enter judgment against Defendant Choice Home Warranty and grant the following relief:

a.    Enter an order against CHW pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Allen as the class representative;

b.    Enter an order appointing Kimmel & Silverman, P.C. and Butsch & Roberts LLC as class counsel;

c.    Enter judgment in favor of Allen and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(c) (and its corresponding regulations) and up to $1,500 per violation of each subsection if CHW willfully violated the TCPA;

d.    Award Allen and the class all expenses of this action, and requiring CHW to pay the costs and expenses of class notice and administration; and,

e.    Award Allen and the class such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs James Jubb, Velma J. Howell, Tadd Snowbarger, Pamela Allen and Jon Hanson demand a jury trial in this case.

Respectfully submitted,

*/s/ Jacob U. Ginsburg*

Jacob U. Ginsburg, Esq.
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, PA 19002
Phone: (215) 540-8888 ext. 104
(215) 540-8888 Ext. 104
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com

*/s/ Christopher E. Roberts*
Christopher E. Roberts, Esq. (PHV anticipated)
Butsch Roberts & Associates LLC
231 S. Bemiston Ave., Suite 260
Clayton, MO 63105
Tel: (314) 863-5700
Fax: (314) 863-5711
roberts@butschroberts.com

Dated: December 28, 2023