<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES JUBB *et al.*, | |
| Plaintiffs, | No. 23cv23382 (EP) (MAH) |
| v. | OPINION |
| CHW GROUP, INC. d/b/a CHOICE HOME WARRANTY, | |
| Defendant. | |

**PADIN, District Judge.**

Plaintiffs James Jubb, Velma Juanita Howell, Tadd Snowbarger, Pamela Allen, and Jon Hanson (collectively "Plaintiffs") bring this putative class action lawsuit against Defendant CHW Group, Inc. d/b/a Choice Home Warranty ("CHW") stemming from CHW's alleged unlawful telemarketing practices in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"). D.E. 1 ("Complaint" or "Compl."). CHW moves to dismiss all counts for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 18 ("Motion" or "Mot."). The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Motion will be **DENIED**.

I.  **BACKGROUND**[1]

    A.  **Factual Background**

Plaintiffs allege receiving unwanted telemarketing calls from CHW. *See generally* Compl. All five used their cell phones for residential purposes. *Id.* Based on CHW's conduct, Plaintiffs allege three violations on behalf of themselves and others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

In Count I, Jubb and Hanson allege a violation of 47 U.S.C. § 227(b)(1) of the TCPA, which prohibits placing calls using an artificial or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. *Id.* ¶ 129. Plaintiffs allege CHW's acts were done with "malicious, intentional, willful, reckless, wanton and negligent disregard for the putative class members' rights under the law." *Id.* ¶ 134.

In Count II, all Plaintiffs allege that CHW violated 47 U.S.C. § 227(c)(5) of the TCPA by placing more than one call to cell phones within a 12-month period that are registered on the National Do-Not-Call registry. *Id.* ¶ 136. In Count III, Allen alleges that CHW violated 47 U.S.C. § 227(c)(2) of the TCPA and 47 C.F.R. § 64.1200(c)(1) by initiating telephone solicitations before 8:00 AM local time. *Id.* ¶¶ 149-151.

Plaintiffs allege that CHW is directly liable for the unsolicited calls, but in the alternative, that CHW is vicariously liable for those calls should discovery show that some or all of the calls were made by third-parties on behalf of CHW. *Id.* ¶¶ 105-06, 110. Plaintiffs allege specific facts regarding each individual Plaintiff as follows.

---

[1] The facts in this section are taken from the well-pled factual allegations in the Complaint, which the Court presumes to be true for purposes of resolving the Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

      *1.*  *James Jubb*

   Jubb, a resident of Massachusetts, received at least eight unsolicited voice calls, pre-recorded messages, and text messages from CHW beginning around December 30, 2019. *Id.* ¶¶ 10, 27, 33. On these calls, someone from "Choice Home Warranty" identified themselves as the caller. *Id.* ¶ 35. Two of the phone numbers that Jubb received calls from have been confirmed to be associated with CHW. *Id.* Jubb could tell one call he received was a pre-recorded message because the voice was "robotic and computerized" and instructed him to press digits instead of "simply asking the question as a live person would." *Id.* ¶ 30. In response to a text sent to his cell phone, Jubb replied "STOP," yet he received two more calls from CHW after. *Id.* ¶¶ 31-32.

   Jubb registered his phone on the Do-Not-Call registry on May 19, 2007. *Id.* ¶ 26. Prior to receiving these messages, Jubb had no business relationship with CHW, nor had he provided express written consent to receive these calls. *Id.* ¶ 28.

      *2.*  *Velma Juanita Howell*

   Howell, a resident of Florida, received at least six unsolicited phone calls from CHW beginning around October 1, 2021 to sell her a home warranty plan. *Id.* ¶¶ 13, 43, 47. On these calls, someone from "Choice Home Warranty" "repeatedly" identified themselves as the caller. *Id.* ¶ 49. On one of these calls, Howell explicitly stated she was on the Do-Not-Call registry and that she did not want to be contacted for solicitation purposes, yet CHW contacted her again few hours later the same day. *Id.* ¶ 50.

   Howell registered her phone on the Do-Not-Call registry on May 21, 2009. *Id.* ¶ 41. Prior to receiving these messages, Howell never sought CHW's services. *Id.* ¶ 44.

      *3.*  *Tadd Snowbarger*

   Snowbarger, a resident of Oklahoma, received at least one call and one text from CHW regarding a home warranty beginning in January 2021. *Id.* ¶¶ 12, 60. On a January 5, 2021 call,

3

the calling party confirmed he was from "Choice Home Warranty" and stated the callback number was 800-816-2688, a number known to be associated with CHW. *Id.* ¶ 61. Snowbarger told the caller he was disinterested in its services and to stop calling him; despite this, he received a text message solicitation from CHW the next day. *Id.* ¶¶ 62-63.

Snowbarger registered his phone on the Do-Not-Call registry in June 2007. *Id.* ¶ 54. Prior to receiving these messages, Snowbarger did not consent to being contacted by CHW nor did he seek any home warranty services. *Id.* ¶¶ 57-58.

### 4. *Pamela Allen*

Allen, a resident of Washington, received at least seven phone calls from the same phone number associated with CHW beginning in February 2020 regarding home warranty plans. *Id.* ¶¶ 69, 75, 79. On one of those calls, the caller identified himself as "Jordan" and stated he was calling from "Choice Home Warranty." *Id.* ¶ 77. Allen has a phone number beginning with area code 509, which is associated with Washington state. *Id.* ¶ 73. She received at least two of these calls before 8:00 AM Pacific Standard Time. *Id.* ¶¶ 74-75.

Allen registered her phone on the Do-Not-Call registry in 2006. *Id.* ¶ 67. Prior to receiving these messages, she did not consent to being contacted by CHW nor did she ever express interest in home warranty services. *Id.* ¶¶ 70-72.

### 5. *Jon Hanson*

Beginning in July 2021 and continuing through December 2023, Hanson received at least 28 calls from CHW as well as agents acting on its behalf regarding home warranties. *Id.* ¶¶ 88, 96. These messages were sent to two cell phones that Hanson owned. *Id.* ¶¶ 82, 85. Some of these were from live parties who identified themselves as calling from Choice Home Warranty, *id.* ¶¶ 89-90, while other calls came from "Miranda," an "avatar/soundboard technology" which uses computerized or pre-recorded clips programmed to respond to human prompts. *Id.* ¶ 94. After

4

asking Hanson several questions in a "jarring and unnatural manner," Miranda would transfer Hanson to a live agent from CHW. *Id.* ¶¶ 92, 95. Accordingly, Hanson alleges CHW to be responsible, directly or vicariously, for these calls. *Id.* ¶ 102.

Hanson registered his 580 area code phone number on the Do-Not-Call registry on February 28, 2010, and the 913 area code phone number on the Do-Not-Call registry on July 2, 2005. *Id.* ¶¶ 84, 87. Prior to receiving these messages, he did not provide express written consent to being contacted by CHW to place calls to his phones. *Id.* ¶ 103.

### B. Procedural History

Plaintiffs initiated this action on December 28, 2023. Compl. CHW moved to dismiss the Complaint. Motion. Plaintiffs oppose. D.E. 23 ("Opp'n"). CHW replies. D.E. 34 ("Reply").

## II. LEGAL STANDARD

Rule 12(b)(6) permits the dismissal of a case for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The reviewing court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). The defendant bears the burden of showing that a plaintiff has failed to state a claim. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint,

5

matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III.    ANALYSIS

The TCPA is intended to protect individual consumers from receiving intrusive and unwanted telemarketing and robocalls. *Atkinson v. Choice Home Warranty*, No. 22-04464, 2023 WL 166168, at *3 (D.N.J. Jan. 11, 2023) (citing *Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368, 372 (2012)). "The TCPA's prohibition on automated dialing applies to both voice calls and text messages." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013).

Section 227(b) of the TCPA, under which Count I is brought, specifically prohibits initiating a robocall to a cell phone unless the call is made for "emergency purposes," the recipient has given their prior express consent, or the call falls within an exemption created by the Federal Communications Commission ("FCC"). *See* 47 U.S.C. § 227(b)(1)(A)(iii). To state a claim under § 227(b), a plaintiff must allege that "(1) the CHW called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Martinez v. TD Bank USA*, No. 15-7712, 2017 WL 2829601, at *4 (D.N.J. 2017) (internal citations omitted).

Under the TCPA, Congress also provided a private right of action for people who have "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5). To sustain Count II, a plaintiff must allege "that (1) they receive[d] multiple calls within twelve months, (2) by or on behalf of the same entity, (3) on a residential phone registered on the [Do Not Call] List." *Huber v. Pro Custom Solar, LLC*, No. 19-1090, 2020 WL 2525971, at *2 (M.D. Pa. May 18, 2020) (citing 47 C.F.R. § 64.1200(c)(2)). To prevail on Count III, a plaintiff must plead

6

that she received text messages or calls from CHW before 8:00 am or after 9:00 pm local time. 47 C.F.R. § 64.1200(c)(1).

CHW raises several arguments as to why all three counts of the Complaint should be dismissed. As explained below, the Court disagrees with CHW and will **DENY** the Motion.

### A. Plaintiffs Sufficiently Plead a Direct Liability Theory

CHW first contends that Plaintiffs fail to plead facts adequately alleging direct liability. *See* Mot. 17-34. The Court disagrees.

Under the TCPA, a plaintiff establishes direct liability by showing that the defendant was the person or entity that "initiated" the telemarketing call. *Doyle v. GoHealth, LLC*, No. 22-04291, 2023 WL 3984951, at *4 (D.N.J. Mar. 30, 2023). An entity or individual "initiates" a telephone call when "it takes the steps necessary to physically place a telephone call." *Id.* (quoting *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6583 ¶ 26 (2013)). Accordingly, an entity "is not directly liable for a violation of the TCPA unless it initiates a call." *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574 at 6582 ¶ 24.

The gravamen of CHW's argument is that Plaintiffs fail to show that CHW placed the calls at issue. *See* Mot. 10-12. To support its position, CHW relies on several cases where courts have found plaintiffs failed to plead a direct liability theory under the TCPA when providing little to no information about who "actually physically placed each call or text message at issue directly to the plaintiff." Mot. at 12. Indeed, relying on many of the same cases, CHW raised a similar argument in *Atkinson*. 2023 WL 166168, at *3. In that case, Judge Vazquez explained that statements in the complaint that clearly alleged that the defendant placed the calls at issue and were supported by specific facts supported the inference that the defendant was directly liable. *Id.* For example, in *Atkinson*, the court found that the plaintiff successfully alleged the defendant placed the calls at issue by explicitly alleging such fact and that the calls came from telephone numbers

7

known to be associated with the defendant. *Id.*; *see also Adam v. CHW Grp., Inc.*, No. 21-19, 2021 WL 7285905, at *5 (N.D. Iowa Sept. 9, 2021) (same).

Like in *Atkinson*, here, Plaintiffs provide sufficient detail to directly connect CHW to the calls at issue. As Plaintiffs note, each Plaintiff individually alleges that CHW placed the calls and texts they received, and the Complaint provides additional information as to how these calls trace back to CHW. Opp'n at 15. In addition, Plaintiffs allege that callers stated they were calling from "Choice Home Warranty" and that many of the calls originated from numbers that Plaintiffs confirmed associated with CHW. *See, e.g.*, Compl. ¶¶ 77-79 ("During the call on March 23, 2020, the agent on the line disclosed his name was "Jordan" and he was calling from 'Choice Home Warranty' . . . The remainder of the calls in the chart above, came from the same phone number as the call from 'Jordan' of CHW. . . The undersigned counsel has investigated and the phone number 848-256-4687 is in fact, associated with CHW."); *see also id.* ¶¶ 49, 61, 89-93.

A complaint "does not need to provide extensive information as to the content and nature of the call to sufficiently plead" a TCPA violation. *Dudley v. Vision Solar*, LLC, No. 21-659, 2021 WL 3077557, at *3 (E.D. Pa. July 21, 2021) (citing *Kaplinsky v. Robert Wood Johnson Univ. Hosp.*, No. 15-7846, 2016 WL 544491, at *2 (D.N.J. Feb. 10, 2016)). Drawing all reasonable inferences in favor of Plaintiffs, as the Court must at the motion to dismiss stage, the Court finds that Plaintiffs have adequately pleaded that CHW placed the calls at issue, and therefore that Plaintiffs have successfully pled a direct liability theory against CHW.

### B.     Plaintiffs Successfully Plead a Vicarious Liability Theory

In addition to direct liability, the TCPA "'creates a form of vicarious liability making an entity liable when a third party sends unsolicited communications on its behalf in violation of the Act.'" *City Select Auto Sales, Inc. v. David/Randall Assocs., Inc.*, 96 F. Supp. 3d 403, 419 (D.N.J. 2015) (quoting *Brodsky v. HumanaDental Ins. Co.*, No. 10-3233, 2014 WL 2780089, at *6 (N.D.

Ill. June 12, 2014)). Federal common law principles of vicarious liability are applicable where the plaintiff establishes an agency relationship between the defendant and a third-party caller. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016); *Cunningham v. Cap. Advance Sols. LLC*, No. 17-13050, 2018 WL 6061405, at *6 (D.N.J. Nov. 20, 2018).

> There are three types of vicarious liability: actual authority, apparent authority, and ratification. First, "[a]n agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 120 (3d Cir. 2013) (citation and quotations omitted). Second, "[a]pparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship." *Id.* (citation and quotations omitted). Finally, "ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement Third of Agency, § 4.01 (2006).

*Doyle v. GoHealth, LLC*, No. 22-4291, 2023 WL 11900257, at *2 (D.N.J. Dec. 7, 2023). For a motion to dismiss, the Court may infer that actual authority exists based on allegations that the defendant "authorized [the telemarketers to] plac[e] telemarketing calls to potential clients" on the defendant's behalf and that the "[d]efendants were the ultimate beneficiaries" of those solicitations. *Smith v. Vision Solar LLC*, No. 20-2185, 2020 WL 7230975, at *3 (E.D. Pa. Dec. 8, 2020) (quoting *Cunningham*, 2018 WL 6061405, at *6).

CHW contends that Plaintiffs fail to plead "any facts in their Complaint remotely supporting an inference that CHW was in a common law agency relationship with any third party that called them, as required vicarious TCPA liability." Mot 34-35. Plaintiffs argue that at this stage of the litigation, they have alleged sufficient facts to support an inference of an agency relationship. To that end, Plaintiffs allege, *inter alia*, that "CHW, or agents acting on its behalf, called Hanson's phone numbers soliciting home warranties" and that "CHW may have hired,

9

encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Plaintiffs and only known to CHW." Compl. ¶¶ 88, 110.

The Court finds that Plaintiffs sufficiently plead a vicarious liability theory. Plaintiffs' allegations that agents acting on behalf of CHW solicited home warranty services to Plaintiffs suffices to plead an agency relationship between the parties. For example, Hanson alleges "Miranda," the soundboard avatar, transferred his call to Mark from Choice Home Warranty. Compl. ¶ 93. Hanson then received several phone calls from Miranda in late 2023. *Id.* ¶¶ 93, 96. Jubb similarly knew the calls were by or on behalf of CHW because voice messages he received identified "Choice Home Warranty" as the caller and were from phone numbers confirmed to be associated with CHW. *Id.* ¶¶ 35-36.

Plaintiffs also plead an agency relationship by alleging how CHW "reaped the rewards of those solicitations"—*i.e.,* by following up with Hanson many times thereafter. *Smith*, 2020 WL 7230975, at *4; *see also Doyle*, 2023 WL 11900257, at *3. Ultimately, the "question of agency for TCPA cases will be decided after discovery, as 'without discovery it is impossible for [plaintiffs] to know the nature of an alleged relationship' between the purported principal and agent." *Smith*, 2020 WL 7230975, at *4 (quoting *Hodgin v. Parker Waichman LLP*, No. 14-733, 2015 WL 13022289, at *2 (W.D. Ky. Sept. 30, 2015)). This is appropriate in instances like this where "'factual information is peculiarly within the CHW's knowledge or control.'" *Landy v. Nat. Power Sources, LLC*, No. 21-425, 2022 WL 797967, at *3 (D.N.J. Mar. 16, 2022) (quoting *McDermott v. Clondalkin Grp., Inc.*, 649 Fed. App'x 263, 267-68 (3d Cir 2016).

### C.  Plaintiffs Sufficiently Plead Receiving At Least Two Solicitation Calls From CHW

CHW also argues that Plaintiffs fail to sufficiently plead that each Plaintiff received more than one phone call for "solicitation purposes" as required by the TCPA. Mot. 36-38. The Court disagrees.

Under the TCPA, the term "telephone solicitation" means the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4). Therefore, Plaintiffs must show they received more than one telephone solicitation "initiated" "by or on behalf of the same entity" in a 12-month period, in order to bring such a claim. 47 U.S.C. § 227(c)(5); *see also Smith v. Vision Solar LLC*, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020).

Plaintiff Jubb alleges that CHW sent him a voice message offering a $50 discount on a home warranty from CHW. Compl. ¶ 32. In addition, he alleges to have received at least five calls from two phone numbers known to be associated with CHW and where someone identified "Choice Home Warranty" as the caller. *See* Compl. ¶¶ 33, 35.

Plaintiff Howell alleges that CHW placed calls to her on "numerous occasions attempting to solicit Plaintiff a home warranty plan." *Id.* ¶ 46. According to Howell, the calling parties repeatedly confirmed they were calling from "Choice Home Warranty." *Id.* ¶ 49.

Plaintiff Snowbarger similarly alleges that CHW placed calls and texts to his phone soliciting home warranty plans. *Id.* ¶ 56. Further, after confirming CHW as the caller, Snowbarger stated he was not interested in their services and requested they not call him. *Id.* ¶ 62.

Plaintiff Allen also alleges that CHW began calling her on her cell phone soliciting home warranty plans she did not want or need. *Id.* ¶ 69. On one occasion, the caller identified himself

11

as "Jordan" and that he was calling from "Choice Home Warranty." *Id.* ¶ 77. Allen then received several additional phone calls from the same number Jordan called from. *Id.* ¶ 78.

Finally, Plaintiff Hanson alleges CHW, or agents acting on its behalf, called his phone numbers soliciting home warranties. *Id.* ¶ 88. Furthermore, he alleges missing multiple phone calls, and that "Stacy" from "Choice Home Warranty" answered when he called the phone number back. *Id.* ¶ 90.

The Court finds Plaintiffs have sufficiently pled that the above calls were solicitations in violation of the TCPA. Other cases that CHW cites in its Motion are distinguishable. For example, in *Dahdah v. Rocket Mortgage LLC*, the court found that plaintiff did not sufficiently allege the content of the calls at issue and therefore failed to show such calls were "telephone solicitations." 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023). However, there, the complaint failed to identify or detail actual communications from the defendant, which is meaningfully different from the present case, where each Plaintiff provides specific information concerning interactions with CHW or agents acting on its behalf. Based on the above, the Court finds Plaintiffs sufficiently pled they each received more than one telephone solicitation "initiated" "by or on behalf of the same entity" in a 12-month period.

D. **Count III Is Not Duplicative of Count II**

CHW argues that Count III, brought by Allen, should be dismissed as duplicative of Count II, because a plaintiff can only recover damages for one violation of 47 U.S.C. § 227(c) per call. Mot. at 39-40. While Plaintiffs agree that recovery is limited to one violation of 47 U.S.C. § 227(c) per call, they contend that Plaintiffs can plead multiple claims in the alternative and that any potential recovery should only be limited at the time of trial. Opp'n at 26-28. The Court agrees with Plaintiffs.

12

Under 47 U.S.C. § 227(c)(1), the FCC is tasked with issuing regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." If an individual receives more than one call by or on behalf of an entity within any twelve month period, the TCPA creates a private right of action to recover actual monetary loss or statutory damages of $500, whichever is greater, for violations of the regulations issued by the FCC. *Id.* § 227(c)(5).

Here, Allen alleges two violations of 47 U.S.C. § 227(c). In Count II, she alleges that CHW violated 47 U.S.C. § 227(c)(5) of the TCPA by placing more than one call to cell phones within a 12-month period that are registered on the National Do-Not-Call registry. Compl. ¶ 136. In Count III, Allen alleges that CHW violated 47 U.S.C. § 227(c)(2) of the TCPA and 47 C.F.R. § 64.1200(c)(1) by initiating telephone solicitations before 8:00 AM local time. *Id.* ¶¶ 149-151.

The Court agrees it would be improper to dismiss Count III as duplicative of Count II because Allen can only recover for one of these two alleged violations per call. As Plaintiffs show, courts can limit a plaintiff's recovery to one violation per call once a jury finds multiple violations per call. *See Noviello v. Adam Wines Consulting, LLC*, No. 22-52, 2023 WL 2776696, at *5 (N.D. Tex. Apr. 4, 2023). Dismissing a count before then would not only be unnecessary, but it would crucially deprive a plaintiff of their opportunity to establish liability under multiple alternative theories in contravention of Federal Rule of Civil Procedure 8(d)(2).[2] *See Charvat v. Echostar Satellite, LLC*, 621 F. Supp. 2d 549, 557 (S.D. Ohio 2008). Therefore, the Court will not dismiss Count III. However, any potential eventual recovery will limited to one violation per call.

---

[2] "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2).

IV. CONCLUSION

For the foregoing reasons, CHW's motion to dismiss will be **DENIED**. An appropriate Order accompanies this Opinion.

Dated: March 28, 2025

                                            Evelyn Padin, U.S.D.J.